We move to the 6th case this morning, U.S. v. Contreras. I think 6th is Garner. Garner, I'm sorry. Garner v. Muenchow. Mr. Garner v. Muenchow Yes, sir. Mr. Garner v. Muenchow Okay. So I'll begin with the catalogs. There was enough evidence for which a jury could infer that the catalogs were indeed not unavailable. And if I may, I'd like to quote a bit of the record that illustrates this. Here's a response to an interrogatory that defendants provided. Defendants do not have sufficient knowledge as to whether a catalog could have been made immediately available to plaintiff. And it goes on, plaintiff may have had to wait to receive a catalog if none were available on that day. So according to the defendants themselves, it's unclear whether catalogs were or weren't available. And of course, you can't issue summary judgment when that kind of issue still remains open. But that's just one piece of evidence on the catalogs. There are other pieces of evidence about their unavailability. For example, I think it was the sergeant who in his affidavit said Garner may have had to wait for a catalog if none were available. In addition, no one told Garner at the time that a catalog was unavailable, which is an awfully strange thing to happen if indeed there weren't any around. I believe the other question was about the Quran and whether those were available. To my knowledge, the prison officials have never contested that Qurans were indeed available in the chapel library. All they've said is that my client didn't make a written request for a Quran. But, of course, that's a material factual dispute right there. My client says in an affidavit that he did make such a written request. And that's precisely the sort of thing that- Counsel, the difficulty I have with this claim across the board is that it's a claim for damages. This is not a claim for injunctive relief against a policy that either discriminates against Muslims or substantially interferes with their religious exercise under the First Amendment. This is a claim for damages against specific prison officials, three officers, the warden, and the grievance counselor. I guess there's one more, the chaplain, in the case. And there just isn't any evidence of intentional interference with your client's religious exercise. The whole debate about whether catalogs were or were not available and whether they should have sort of patched one together during this period of several months when he was in segregation and without his religious items that he needed for his personal worship. It all adds up to what the district court characterized as negligence. Essentially, people were dropping the ball all over the place. That might be a failure of accommodation claim, but that's not actionable. What we've got is a claim for damages for intentional interference with religious exercise or intentional discrimination. And there is no evidence of that here. There was just a lot of inattentiveness. If I may begin with the issue of intentional burdening of religion and then turn to discrimination. I'm talking about intentional interference. Let's accept that there was a substantial burden here. There needs to be evidence under the case law to hold them liable for damages that they intentionally interfered. I would dispute that. The First Amendment requires accommodation of prisoners where failure to provide the accommodation would create a substantial burden unless there's a good penological justification for failing to provide that. Now, we accept that we have to show that the imposition of the burden or the denial of the accommodation was knowing as opposed to merely negligence. There's lots of evidence of knowing denial of an accommodation here. The most obvious is that the accommodation claim just is not present here. The law is not clearly established about that. It's clearly established that they can't intentionally interfere or intentionally obstruct his religious exercise. And it's clearly established they can't intentionally discriminate. The accommodation area is very fuzzy. I respectfully disagree. This court is bound by the Supreme Court's decision in Olón against Chabaz, which said that there is such a duty of accommodation. That case continues to be cited by the Supreme Court. It's never been overruled or questioned by the Supreme Court. In addition, this court's own decision in, I think it was Thompson against Holmes, says there is a duty of accommodation. In that case, a prison, in fact, the very same prison that's involved in this case, failed to provide Ramadan meals for a prisoner who wanted to break his fast. And the court said that denial of an accommodation violated his clearly established rights back in 2013. So I respectfully disagree with the suggestion that this is not clearly established. Thompson also requires intent. General intent. We think that's equivalent. Intent to deny his religious exercise. We can certainly show that here because there was evidence that Garner made repeated requests, in many cases repeated requests to the same person, unit manager, and received either no response or was ignored or was denied in response to those requests. Now, the sheer numerosity of those requests is a pretty strong indication that it's not just negligence. I mean, if someone keeps telling you 10 times, I need X to practice my religion, and you repeatedly ignore that or point him to someone else and don't follow up, even though he keeps telling you, my request hasn't been fulfilled, I agree. One inference a jury could draw is someone just dropped the ball. But another inference a jury could draw is that this was deliberate or at least a knowing denial of an accommodation.  I want to turn also to discrimination. A jury could certainly think it's not a coincidence that at least two Muslim prisoners didn't receive catalogs and Qurans, while Christian prisoners at around the same time in around the same area got Bibles and catalogs. That's an institutional failure, accepting that those affidavits as true. There's nothing to tie the specific defendants here to acts of discrimination. I respectfully disagree on that, too. There are at least two things I can think of that would tie them to these acts. The first is the unit manager's affidavit said that it was the sergeant and lieutenant who were responsible for handling the floor operations within this particular part of the segregation unit. They would have been the ones responsible for handing out catalogs. We know that those two people were the ones who would have denied Garner and the other Muslim prisoner a catalog, but would have granted the Christian prisoners a catalog. Similarly, the very same chaplain in this case is the one who handed out Bibles to those Christian prisoners, but didn't give a Quran to Mr. Garner. But the declarations of these other inmates do not talk about whether they made the requests in writing, as apparently is required. They don't talk about who it was who supplied them with their religious items. We just don't have any link to these particular defendants. I would respectfully disagree with that characterization again. First of all, the declarations do say that it was the chaplain who gave them the religious texts. In response to written requests or oral requests? That isn't clear, but Garner did make a written request. He has sworn to that in his declaration. As for the provision of the catalogs, it's true that the prisoners don't say who provided them the catalogs in their affidavits, but the unit manager's declarations indicates that it would have been the sergeant and the lieutenant. Thank you. Thank you, counsel. Good morning. May it please the court, my name is Abigail Potts. I represent the state defendants in this appeal. As we've already talked about this morning, there are two claims here. There's a religious interference claim under the First Amendment, and there is a equal protection claim under the Fourteenth Amendment relating to religious discrimination. Both of these claims fail because all Garner does is present questions. He does not establish claims. And what Garner fails to realize is that why isn't it sufficient to survive summary judgment on equal protection grounds that there is evidence that the Christian inmates in segregation received catalogs and Bibles and the Muslim inmates were denied catalogs and Qurans? Setting aside whether a prison is required to accommodate the religious needs to the extent of providing access to religious books, isn't it clear that prison officials may not constitutionally provide them to members of one religion, such as Christians here, and not to members of another, such as the Muslim prisoners? Well, getting to your question on the standard, the summary judgment standard, and I think that is kind of what this case can be characterized as, even as the non-movement, Garner has to do more than raise questions and issues. He needs to establish his claims to the extent that he needs to provide enough evidence that, if true, could lead a judge to rule in his favor. And that's what he does not do and cannot do on this record. As you pointed out, he does submit affidavits. And on appeal, Garner's counsel does a very good job of trying to manufacture evidence of intent, but when it comes down to it is that his affidavits simply do not present any evidence of intent that, even if taken as true, could lead a judge to find in his favor. So what we have here is we have a religious interference claim that basically fails because the state does not have a constitutional duty to make vendor catalogs available at all times. And I think that's what this really comes down to. There's no right. But they're making, again, I think we're passing each other in the night. They have them. They're making them available to one religion. They're not available to the other religion. We have a little bit of evidence in the record that there's been a disparate impact, possibly, in terms of some Christian inmates have gotten catalogs. But what there is no evidence of is that there was an intent to treat different religions differently. And I think these two claims kind of get blurred, and we can start going more into what's more properly the discrimination claim. But this is just even, in your view, this wouldn't even be circumstantial evidence? If all the Christians are getting catalogs, none of the Muslims are getting catalogs? I think it depends. Again, we have to figure out which claim we're addressing. If we're addressing the religious interference or accommodation claim, we need to keep in mind that the First Amendment's requirements are to remove the obstacles so that he can practice his religion. We have done that by allowing Qurans and religious property items in his possession and giving him several opportunities, several different avenues of acquiring those property items. He could get them through the mail from his family members. We talk about this, and I don't want to go into too much length on it, but there were other... If the family members aren't in contact with him, what if the family members can't afford them? It is not the state's responsibility to pay for a Quran for Mr. Garner. There is not a right of subsidy here. It's their responsibility to hand out these things equally. Well, that kind of gets us... Regarding the free exercise claim, isn't the problem here that the defendants seem to have impeded access to the Quran by providing two paths to obtaining it, through the catalog or through the chaplain? And then, you know, we're at summary judgment, refusing to acknowledge his requests through those sources. By affirmatively representing that those paths are available, so that he used them and waited for a response that did not come for months. Don't those actions impede the exercise of the religion? So I think there's... Oh, excuse me. What if he yielded the religious materials? I think there's a couple different issues going on here. First, we have what you're pointing to is the evidence of intent within the First Amendment claim. And there is simply not enough evidence in the record to establish a claim of intent to interfere with Mr. Garner's religious practice differently than other inmates. And at summary judgment, it is true that we have to take as true the non-movement facts here. But even doing that, he cannot create a claim. All he creates is questions. He does not create a claim showing intentional interference here. What we do know from the record is that Mr. Garner had items being shipped to him from his mother-in-law from these same catalogs during his time in segregation. And we also have in the record evidence that Mr. Garner was in communication with an inmate two cells down that had a catalog, and he never asked that inmate for the product number for a Quran. And opposing counsel will say that that was our obligation. That wasn't his obligation to find a different means. But that is simply inaccurate under the First Amendment. The state of Wisconsin allows inmates to possess all sorts of religious property, and they also have multiple avenues from which you can get that property. The fact that there was obviously someone dropped the ball on some communications in this, taking as true Mr. Garner's statements, even though there are no record of these multiple, multiple requests, taking that as true, yes, someone dropped the ball. There is negligence here. This is not a constitutional claim, though, and that is the state's position, is that under the First Amendment we do not have an obligation to ensure, say, that he has enough money in his account to buy a Quran. So what we see is Mr. Garner trying to elevate this to a constitutional claim, and it just can't be done on this record. And then we get into discrimination, and really the essence of why Mr. Garner loses on his discrimination claim, again, relates to intent. There is not any evidence in the record to show an intent to treat these two religions differently. All we have is evidence of a disparate result or a different result. We don't have evidence of intent. And the affidavits that Mr. Garner provides are so sparse and so lacking in detail that we don't know if the proper procedures were followed. We don't know if, say, there were simply more Bibles available for distribution. All of the religious materials in the chapel library are donated. So there's such a lack of detail here that we don't have any idea if Mr. Garner was actually similarly situated to the other inmates or the other atheans from which he provides evidence. So that's really the crux here. We have these two claims. Both of them fail, and the district court properly granted some redressment because under the First Amendment, it really comes down to the fact that he has only shown negligence. And under the 14th Amendment, he's only shown, and very limitedly, a disparate effect or a disparate outcome. But he does not actually show any intent to discriminate based on his religion. And I guess just to kind of conclude here, I want to mention that on appeal, Garner does a very good job of trying to manufacture evidence of intent. And he does so by claiming that a jury could find intent based on the institution's continued violations of its own policy. But that is an overly simplistic mischaracterization of the record because what we see here, if we look at the record, is just because catalogs are allowed as a privilege to an inmate does not mean that they are entitled to them. And so even though Garner does a great job on appeal trying to create an inference of intent, if you really come down to it, he has not met his burden under summary judgment, which requires him to present enough evidence that a judge could find in his favor. And if there's no further questions, I will sit down. Thank you, counsel. You have one minute. Thank you. The state, the prison officials have come forward with a few different explanations for what they have described as the disparate impact between Christians and Muslim prisoners. But what's telling here is that every single one of those explanations raises a disputed issue of material fact. Were catalogs unavailable? Well, we've just shown that there is a disputed issue about whether they were unavailable. Did Garner follow proper procedure in making the request? Well, Garner has produced testimony that he did. So the very fact that they haven't come forward with an explanation for this disparate impact, as they describe it, that can survive summary judgment is by itself an indication that it's up to the jury to decide what was really motivating the prison officials' actions. Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.